Good morning, Mr. Serby. Good morning, Your Honors. My name is Victor Serby. I am the plaintiff appellant appearing pro se, and I'm also an attorney registered to practice before this Court. This case has been to this Court once before, and this Court issued a mandate. They found the language of the settlement agreement, particularly the word unopenable, to be ambiguous, and remanded the case to the lower court to specifically determine what the term unopenable meant in the contemplation of the parties at the time the settlement agreement was entered into. This Court also found that the definition that was used by the lower court in the first trial, the definition of unopenable, was not correct, and using the language of this Court, it could not stand. Upon remand, unfortunately, the lower court did not adhere to the mandate. The lower court put its own . . . stuck to the original definition of unopenable, and basically that's why we're here today. You say in your papers that the district court failed to consider the parties' extrinsic evidence, and I wondered about that because it seems like it considered your testimony about the settlement negotiations, it considered the similarities between the two models. What didn't it consider? The court got one side, and it did consider my testimony, it was unopposed testimony, and it clearly established that at the time of the settlement agreement, there were basically two types of smoke detectors, unopenable and openable, and the gist of the settlement agreement was that the first alert wanted to be able to sell their lithium batteries and smoke detectors that were already on the market, namely the clamshell design, the removable cover design that had been on the market, and the battery drawer, and the battery compartment where you have a battery at the bottom. These smoke detectors can be opened in a matter of seconds by any consumer with no instruction whatsoever from an outside source. Over here, to open the Model 340, the defendants had to get an expert who demonstrated that it took up to five minutes for laypeople to open up the Model 340 smoke detector when given instructions and actually shown how to do it. So if I have a safe, and I say advertise the safe is unopenable, and I give you the combination, it's sure going to be openable, if you tell somebody exactly how to do it, it's going to be openable. The purpose of the, the original intent of the patent was to power a smoke detector by a lithium anode primary battery because it was thought that lithium batteries would have a life of over 10 years. It turns out that a direct substitution of the battery into that smoke detector did not work. You ended up with a smoke detector with a life of a few weeks, and not the length of time that was expected, not even a year originally. What I did is I was able, under contract with the Centers for Disease Control, Center for Environmental Health and Injury Control, I was able to match the electrical characteristics of the battery to the pulse current. Sir, you asked what extrinsic evidence did the court fail to consider? Could you please tell us? I think the court, the court basically said that the evidence, okay. Not what it said, what extrinsic evidence did it fail to consider? That there existed a class of smoke detectors that were deemed openable. What evidence? Oh, oh, oh, oh, no, no, I was, I was, I was the witness, but the, uh, the, uh, the, uh, and. You testified. And I testified in the actual. Extrinsically. And, correct, in the actual. How do you say in your brief the court did not accept extrinsic evidence, if you yourself supplied it? I supplied it, and I supplied the actual smoke detector. I understand, but your brief says the court did not accept extrinsic evidence. No, I, I said they ignored the extrinsic evidence. They ignored it. They ignored the. You're claiming they didn't. I, I didn't say they did not accept it. The court ignored the extrinsic. Ignored it. Yes. And how are we to know that? Because the court ruled against you? Uh, the court ruled against me, saying it. That shows they ignored your evidence. And the court said the evidence is unconvincing to use the, uh, court's language. Isn't that what triers do all the time, when they hear evidence and believe one side and not the other? Well, it's, it's, uh, there was no other side to the, uh, extrinsic evidence. Basically, it was. There was another side to the issue, the fact issue of whether it was unopenable. That was an issue. That was an issue, but the. The court heard evidence. But the court heard evidence as to the definition of what unopenable meant. Unopenable, at that, at the time the contract was formed, uh, meant to deter, uh, physical access to the battery by the consumer. Did the court make a finding on, on what was at issue? No. No finding? Well, the court found, the court basically, uh, said that the definition of, of an unopenable is what Judge Moscoff originally said that this court said cannot stand in view of the, uh, purpose of the patent, which was to prevent access to the battery to the consumer. Did the court make a finding as to whether the device was unopenable? Yes, they said. Did they find it? The court made a finding. What was the standard of review of that finding? Um, normally it would be, normally it would be clear error. Why is it any different in this case? Because the court did not, uh, the court did not view the, uh, find the fact in view of what unopenable meant. The court, uh, the court quoted Vermont Teddy Bears saying that, uh, the contract means what it says. And in Vermont Teddy Bear, uh, there was no ambiguity in the Vermont Teddy Bear contract. Over here, the court, uh, said that the, um, uh, that there is an ambiguity. Now, also, also, um, uh, the court overlooked the Model 827. If you turn to, if you turn to the, um, that was the model that, uh, First Alert admitted was an unopenable model. And if you look at the pictures of A82, uh, on 82 through 8, uh, 8282 to 8286, that's the Model 340. And if you look at A296 to A296A, you have the same smoke detector. Um, the differences were in the brief, in the brief where they basically beefed up the stiffness of the plastic so that it took a slightly harder squeeze to open it. I, I personally was able to open this smoke detector and demonstrated it to the court on the stand that the smoke detector that First Alert deemed as unopenable, truly unopenable, um, was able to be opened in 16 seconds. And I never saw that smoke detector before. So the point is, if you know how to open something, you could open it. If you're shown how to do it, you could open it. But they, uh, they admitted that this is not openable to, uh, they called it an unopenable model, whereas they said that the, uh, 340, uh, was openable. And it's the same thing. Thank you. Thank you. I reserve two minutes for rebuttal, Mr. Serbi. Yes. Good morning and may it please the court. My name is Jeffrey Deitchman. I represent the respondents First Alert and BRK Brands, Inc. Uh, this case is about language in a settlement agreement. Uh, the parties agreed that First Alert could sell smoke alarms using Mr. Serbi's patent. But if the battery compartment was unopenable, they had to pay royalties. If it was openable, they didn't have to pay royalties. The first trial resulted in a dismissal of the complaint, but on appeal, it was vacated and remanded with this court finding the definition and the meaning of openable to be ambiguous. But this court gave some guidance in its opinion. And it said that any definition of the term unopenable must center on the patent's purpose of deterring access to and removal of the batteries by consumers. So if you have a smoke alarm and you take the batteries out and you forget to put the batteries back in, you know, put the smoke alarm back on the ceiling or walls, the case may be, that creates the safety issue. Now, with this safety issue in mind, there are significant differences between the older model that First Alert paid royalties on, that's called the SA-10 year, and its replacement that First Alert didn't pay royalties on, that's called the SA-340. In the SA-10 year, you could open the housing with a tool. And if you were successful in doing that, what you saw was batteries that were soldered to a large circuit board that were affixed to the inside of the housing. You couldn't remove it from the smoke alarm. However, there's a vast difference with the... It being the battery. Pardon? When you say you couldn't remove it from the smoke alarm. The batteries, they were all soldered. You couldn't remove it. You could take a sledgehammer and break it, but you couldn't remove it. The SA-340, which is the subject of this dispute, is entirely different. You could open the housing by pressing down tabs, and then what you see is a battery compartment that pops out. And you could open the battery compartment. Now, the older model didn't even have a battery compartment. The batteries, as I said, were soldered to a circuit board that were affixed to the housing. The SA-340 had a battery compartment. It could come out. You could open the battery compartment. You could put the batteries aside on your desk. And if you inadvertently then put the smoke alarm back on the ceiling or wall, and God forbid there's a fire, there's not going to be a beep, and you're not going to be protected. That's the safety issue that is at issue here. Now, at trial, Mr. Serby says his testimony was unopposed. I cross-examined him. And he admitted all of this about the SA-340. He admitted on the witness stand that you could open the housing. He admitted that you could take out the battery compartment. He admitted that you could open the battery compartment, and he admitted that you could put aside the batteries. And he also admitted significantly that you could put it all back together without batteries and put it on the wall. And that's the issue, and that's the problem. Now, the district court, in addition, heard the testimony of First Alerts Vice President Mark Devine, who on the witness stand demonstrated with the actual model, the SA-340, how it's openable and how the battery compartment is openable and the batteries can be removed. So the district court had ample evidence to find that the battery compartment in the SA-340 was openable. This is not clear error. And for Mr. Serby to say that the district court either ignored or disregarded the mandate that considered the evidence, it was not a single piece of evidence that Mr. Serby offered that was not accepted by the district court. Even over my objections, the district court accepted everything. And if you read the district court's extensive opinion, you see that the district court takes the time to review the evidence and explain why it reached its conclusions and why it found Mr. Serby's testimony, in its words, unpersuasive. Now, Mr. Serby's new theory is that the design has to be of a model to be openable where the batteries can be replaced, like the very old model of smoke detectors that existed before his patent. But, Your Honors, the settlement agreement says nothing about battery replacement. The patent says nothing about battery replacement. What they say is a battery compartment that is openable. And that's what was proved. That was proved at trial. Your Honors, the district judge was obviously in the best position to evaluate the evidence and assess the credibility of the witnesses. And so we submit there was not clear error here. Mr. Serby did not sustain his burden of proving anything about consumers. We presented an expert witness who did a study regarding consumers. He criticized that study, but he didn't put an expert of his own into evidence. He did not present a single piece of evidence as to how a consumer could or could not open any of these models. The only witness on his side was himself. Your Honors, this was not clear error. The judgment should be affirmed. If there's any questions, I'd be glad to try to answer them. If not, thank you for your time. Mr. Serby? This court found that the Model SA-10YR was openable by me. And this is the page, Appendix 272, shows the Model 272 open. You could easily pop out the whole circuit board, put it back together, put it on a wall. The issue, the district court then brought in another criterion in which nobody, which is not part of the settlement agreement, is not part of the extrinsic evidence, that in order to be unopenable, you needed a tool to open it. And the patent doesn't say anything about requiring a tool to open up the case, and the settlement agreement doesn't say anything about needing a tool to open up the case. And opposing counsel is incorrect in that there was no evidence set forward. I brought in four models of smoke detectors of the old type, the battery drawer, the removable cover, the clamshell design, and those were openable within two seconds. It's instructed to do so. And I testified that any consumer could open up in the same time. You take the smoke detector, you lift up the clamshell. You take one of the other older models, you just pop off the cover. You take one of the older models, you just open up the battery drawer. By their own evidence, by their own expert, Dr. Wood, Dr. Wood showed that it took up to five minutes for the test subjects to open up the smoke detector, and that's after they were shown how to do so. And after, by demonstration and verbal instruction. All of this, back to the point I think Judge Newman was making earlier, all of this evidence or information was in front of the district court, and the district court weighed and evaluated it. Correct, but the district court then stuck to it. So the old definition that this court said was not proper and cannot stand, and that's basically why we're up here. Thank you, Your Honor. Thank you very much. Thank you both. We'll reserve decision in this case. Sure, sure, of course somebody can come help you. Take your time, Mr. Shriver. Sorry. Thank you. Thank you.